UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

FIRST AMERICAN TITLE COMPANY,
et. al.,

                Plaintiffs,

                                              Case No. 05-70718

v.                                             Hon. John Corbett O'Meara

MELISSA DEVAUGH, et al.,

                Defendants.

_____/

**OPINION AND ORDER GRANTING**
**DEFENDANTS' MOTIONS TO DISMISS IN PART**

Four title insurance companies filed suit against the Registers of Deeds of Lapeer, Eaton,

Saginaw, Tuscola, and Newaygo Counties for alleged violations of the Sherman Antitrust Act,

the Due Process and Equal Protection Clauses, and a Michigan state law prohibiting the

Registers from maintaining systems of abstracts of title. The defendants filed three separate

motions to dismiss. The court heard oral argument regarding all three motions on May 26, 2005.

During the oral argument, the plaintiff's attorney submitted a paper outline. On May 31, 2005,

Defendant DeVaugh of Lapeer County filed an objection to the submission of this outline. The

court notes DeVaugh's objections. The paper outline did not impact the court's decision-making

process regarding these motions.

**I.  Background**

County Registers are responsible for recording all instruments conveying interests in

land, maintaining a grantor-grantee index of these documents, and providing copies of these

public records to those who request them. The plaintiffs are four title insurance companies

incorporated outside of Michigan. The title companies request copies of each document filed

with the Registers in order to create their own indices, organized by tract of land.  Plaintiffs

claim this is an expensive process, and there are rarely more than two of these indices in any

Michigan county.  Plaintiffs earn profits not only by issuing title insurance but also by reselling

the public documents they purchase to other parties, including other title insurance companies.

The title insurance companies consider themselves to be in competition with the Registers in a

market for public documents.

Anyone requesting a copy of a public record is normally charged $1 per page by the

Register for a paper copy.  The Michigan Legislature sets this maximum price by statute for all

counties.  M.C.L. § 600.2567(1)(b).  If a purchaser buys a paper copy of the record, there is no

restriction regarding with whom the purchaser may share the record.  Within the last few years,

Eaton, Lapeer, Saginaw and Newaygo Counties developed policies that allowed purchasers like

the plaintiffs to buy bulk data sets of records at discounted rates.  The bulk data sets are now

available in electronic formats that make it easier to incorporate them into a tract index.

However, the Registers require bulk purchasers to enter a licensing agreement that restricts the

title insurance companies from sharing this information with others.  Tuscola County does not

provide bulk data sets at all.  It only provides paper copies of the records at the $1 rate, with no

restrictions on use.

A Lapeer County title company who is not a party in this case filed a lawsuit against the

Lapeer County Register for refusing to allow the company to share the information obtained in

the bulk data sets with others.  The plaintiff claimed the Register violated Michigan's Inspection

of Records Act, the Freedom of Information Act, and the Headlee Amendment.  A Michigan

Antitrust Act claim was brought at the state circuit court level, but was not carried through on

2

appeal to the Michigan Court of Appeals.  In November 2004, the Michigan Court of Appeals determined the licensing agreement's restriction on resale was an action authorized by state law, and that it did not violate the Inspection of Records Act,  the Freedom of Information Act, or the Headlee Amendment.  Lapeer County Abstract & Title Company v. Lapeer County Register of Deeds, 264 Mich. App. 167 (2004) (hereinafter "Lapeer County").  The Lapeer title company filed an application of appeal to the Michigan Supreme Court in January 2005.  The application is still pending.

A Michigan statute prohibits any county with a population of less than 900,000 residents from establishing and maintaining a system of abstracts of title unless the majority of electors of the county have voted in favor of establishing such system at an election called for by the county board of commissioners upon the presentment of a petition submitted by 8% of voters who cast a vote for the office of secretary of state at the last general election.  M.C.L. §§ 53.141, 53.151.  In the absence of approval by a majority of voters, Plaintiffs claim that a county may only maintain an alphabetical grantor-grantee index, citing M.C.L. § 565.491.  Each of the defendant counties have less than 900,000 and none of them have obtained voter approval to establish a system of abstracts of title.  Plaintiffs claim the Registers are nonetheless currently maintaining tract indices on their internet websites, and that these tract indices are systems of abstract of title which are prohibited by statute.

## II.  Law and Analysis

Count I alleges that the Registers are engaging in anti-competitive practices in violation of the monopolization clause of the Sherman Antitrust Act.  15 U.S.C. § 2.  By preventing them from reselling the public records when they are given bulk discount prices, Plaintiffs allege that

the Registers are monopolizing the ability to sell or resell public documents.  Count II alleges

violations of the Due Process Clause (both substantive and procedural) and the Equal Protection

Clause.  Count III is a Michigan state law claim, brought under diversity jurisdiction, alleging

that the registers are maintaining a tract index without voter approval, in violation of a Michigan

law.

## A.  Claim Preclusion, Issue Preclusion, and the Rooker-Feldman Doctrine

The Registers argue that the lawsuit should be dismissed because it is barred by claim

and issue preclusion by the Lapeer County lawsuit.  However, none of the plaintiffs were parties

to that litigation, and the legal issues arise under different sources of law.  As such, neither claim

nor issue preclusion is warranted.  Dart v. Dart, 460 Mich. 573, 586 (1999); Monat v. State Farm

Ins. Co., 469 Mich. 679, 684-85 (2004).  Likewise, the Rooker-Feldman doctrine does not bar

consideration of this case.  It is not an attempt to appeal the Lapeer County lawsuit because the

plaintiffs were not parties to the Lapeer County lawsuit.  See Exxon Mobil Corp. v. Saudi Basic

Industries Corp., ___ S.Ct. ___, 2005 WL 711586 (Mar. 30, 2005).

## B.  Abstention

The Registers argue that the court should abstain from deciding this case until the

Michigan Supreme Court rules on the Lapeer County appeal.  The Michigan Supreme Court

could potentially overrule the Michigan Court of Appeals decision regarding the statutory

authority under which the Registers act when they set conditions on contracts.  This potentially

impacts the court's analysis of whether the Registers are immune from the Sherman Act.  The

Registers cite two different abstention doctrines - Burford abstention and Colorado River

abstention.  Burford abstention doctrine counsels federal courts to abstain from deciding cases

4

that interfere with complex state administrative and regulatory schemes.  In Burford v. Sun Oil Co., 319 U.S. 315 (1943), the Supreme Court required a federal district court to abstain from deciding a challenge to a Texas Railroad Commission permit which potentially interfered with a complex state administrative mechanism that allocated oil drilling rights.  Burford abstention is appropriate "(1) when there are difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case at bar, or (2) where the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern."  Ellis v. Gallatin Steel Co., 390 F.3d 461 (6th Cir. 2004) (quoting New Orleans Pub. Serv. Inc. v. Council of the City of New Orleans, 491 U.S. 350, 361 (1989).  In this case, the property recording scheme is a state administrative scheme.  However, it is not a complex regulatory scheme that requires a unitary state decisionmaker like oil drilling rights regulation.  Indeed, the administrative authority for the recording system is divided by the Michigan Constitution into individual county units.

Moreover, as it stands now, the Michigan law regarding the authority for Registers to make conditions on bulk records contracts is not unclear.  As this opinion discusses below, there is a clear Michigan Court of Appeals decision on this issue.  Therefore, deference to allow the state courts to decide the issue is unnecessary.  If the Michigan Supreme Court reverses the decision on appeal, it could potentially impact the analysis of the Registers' immunity to the Sherman Act.  However, this is not a reason to stay or dismiss the case on Burford abstention grounds.

Colorado River abstention doctrine applies to situations where parallel litigation is

5

ongoing in both the federal and state courts.  In general, the federal courts should decide all cases

properly before them.  <u>Colorado River Water Conservation Dist. v. United States</u>, 424 U.S. 800,

813-14 (1976).  A federal court need not dismiss or stay a matter simply because a similar issue

is currently being litigated in state court.  <u>Id.</u> at 817.  In exceptional circumstances, however, a

federal court may abstain from deciding a matter that is also before a state court.  The Sixth

Circuit has summarized eight factors that should be weighed when determining whether to

abstain under <u>Colorado River</u>:

> (1)  Whether the state court has assumed jurisdiction over a res or property;
> (2)  Whether the federal forum is as convenient to the parties;
> (3)  Avoidance of piecemeal litigation;
> (4)  The order in which jurisdiction was obtained;
> (5)  Whether the source of governing law is state or federal;
> (6)  The adequacy of the state court actions to protect the federal plaintiffs' rights
> (7)  The relative progress of the state and federal proceedings; and
> (8)  The presence or absence of concurrent jurisdiction.

<u>Great Earth Companies, Inc. v. Simons</u>, 288 F.3d 878, 886 (6th Cir. 2002).  This case has

different parties and deals with completely different areas of law than the <u>Lapeer County</u>.  The

<u>Lapeer County</u> court's decision regarding the source of authority for Registers to condition bulk

rates on non-disclosure is an antecedent state law claim to the question of federal antitrust

immunity.  However, <u>Colorado River</u> abstention is to be used only rarely, and the factors noted

above do not warrant abstention in this case.

6

**C.  Count I - Sherman Act**

1.  Lapeer, Eaton, Saginaw, and Newaygo Counties - State Action Exception

The United States Supreme Court has interpreted the federal Sherman Act to be inapplicable to the actions of States, as fellow sovereigns in a dual sovereignty system.  Parker v. Brown, 31 U.S. 341 (1943).  Local government units are not sovereign entities and are therefore not automatically immune from the Sherman Act.  City of Lafayette v. Louisiana Power & Light Co., 435 U.S. 389 (1978).  However, a local government unit may restrict trade without violating the Sherman Act if the state legislature has clearly articulated an intention to allow municipalities to engage in anticompetitive behavior.  City of Columbia v. Omni Outdoor Advertising, Inc., 499 U.S. 365, 372 (1991).  This intention to authorize anticompetitive behavior need not be express in a statute.  It is enough that it is the foreseeable result of acts the statute authorizes.  Id. at 373; Michigan Paytel Joint Venture v. City of Detroit, 287 F.3d 527, 535-36 (6th Cir. 2002).

The Michigan Inspection of Records Act provides that the Registers have the option to produce requested records using a medium the Registers select.  M.C.L. § 545.551.  The Registers can also make reasonable regulations regarding their examination.  Id.  The Registers argue that these statutory provisions give them the authority to make conditions on bulk sales of records.  However, the Michigan Court of Appeals expressly rejected the notion that M.C.L. § 545.551 gave Registers the authority to enter contracts that restrict the resale of public records.  Lapeer County, 264 Mich. App. at 174-75.  The court held, "by its plain meaning, this language only grants a power to make reasonable rules and regulations concerning the inspection and examination of records.  It was nothing to do with the making of contracts for the sale of copies,

let alone entering into contracts that provide for only the restricted use of such copies." Id.  At

the same time, the court found that this statute did not prohibit Registers from entering into such

contracts.  Id. at 175.  The court held that Registers have the ability to restrict the dissemination

of information provided in bulk form under a county government's general power to make

contracts and a county's general power to manage its own business affairs.  Id. at 176-77 (citing

M.C.L. §§ 45.3, 46.11).  The court noted,

> Simply as an exercise of the general power to contract, defendant has the
> authority to propose and enter into contracts in which it provides concessions,
> such as a reduced bulk rate fee or copies in microfilm form, in return for a
> purchaser agreeing to special conditions, such as a restriction on the use of the
> copies provided.  Such a quid pro quo arrangement is a usual and inherent part of
> the contracting process.  Further, the negotiation of such contracts is within the
> broad statutory grant of authority provided for the care and management of the
> property and business concerns of a county.

Id.  This court will not question the judgment of the Michigan Court of Appeals regarding the

statutory authority under which the Registers are acting when they make conditions on bulk

sales.  The very policy reason behind the Parker exception, respect for state sovereignty, cautions

the court against delving too deeply into state law matters to determine whether the Parker

exception applies.  See City of Columbia, 499 U.S. at 372; Town of Hallie v. City of Eau Claire,

471 U.S. 34, 44 n. 7 (1985).

In Community Communications Company, Inc. v. City of Boulder, 455 U.S. 40 (1982),

the Supreme Court held that the City of Boulder was not immune to the Sherman Act when its

alleged anticompetitive actions were made pursuant to the general Home Rule Amendment to the

Colorodo Constitution.  A general grant of power to a local government was not a sufficiently

articulated state policy that would make its actions immune to Sherman Act prohibitions.  Id.  A

8

2:05-cv-70718-JCO-VMM   Doc # 40   Filed 06/13/05   Pg 9 of 14   Pg ID 437

"State may not validate a municipality's anticompetitive conduct simply by declaring it to be lawful." Town of Hallie, 471 U.S. at 39. The general power to make contracts is a general grant of authority similar to Home Rule authority. As such, Plaintiffs argue that the City of Boulder decision suggests that when a local government acts merely under the general power to make contracts, it is not immune from the prohibitions of the Sherman Act.

However, more recent decisions of the Supreme Court and the Sixth Circuit have broadened Parker immunity for local governments since the City of Lafayette and City of Boulder decisions. See Town of Hallie, 471 U.S. 34; City of Columbia, 499 U.S. 365, Michigan Paytel Joint Venture v. City of Detroit, 287 F.3d 527. In particular, the Sixth Circuit held in Michigan Paytel that Michigan's Home Rule City Act, which grants authority to cities to request and select bids for city contracts, was a sufficiently articulated state policy to immunize the City of Detroit from the Sherman Act for its actions in choosing a bidder for a city contract. The statutory provisions the court cited allowed cities to make contracts generally and to maintain their prisons. Id. at 536 (citing M.C.L. §§ 117.3(j), 117.4e). The court further noted that the Michigan Constitution requires that these local government authorization provisions must be "liberally construed in the favor" of the local government units. Id. (quoting Mich. Const. art. VII., § 34). Accordingly, the court concluded that "the City is immune from antitrust liability because anticompetitive effects are the logical and foreseeable result of the City's broad authority under state law and the Michigan Constitution to bid out public contracts for the maintenance of City prisons." Id.

The court's reasoning gives broad antitrust immunity to local governments because of the policies expressed in relatively general Michigan statutory provisions. Relying on this decision,

9

the Registers argue that their ability to set the terms of their bulk sales contracts is likewise immune from the Sherman Act.  Plaintiffs argue that the <u>Michigan Paytel</u> decision should be distinguished on its facts because it challenged the local government selecting one party to fulfil an exclusive contract, which by definition must have anticompetitive effect on the loser in the bidding.  Plaintiffs' challenge here is not to a contract award generally, but to a condition of a contract that they allege is anticompetitive.  Ultimately, however, the reasoning of <u>Michigan Paytel</u> supports broad local government antitrust immunity under general Michigan statutes, despite the earlier Supreme Court reasoning in <u>City of Boulder</u>.  If the general power to contract gives a local government antitrust immunity over the choice of choosing a contractor, it also gives a local government antitrust immunity in setting terms within a contract.  Setting terms, as the Michigan Court of Appeals noted, is a "usual and inherent part of the contracting process." <u>Lapeer County</u>, 264 Mich. App. at 177.  It was therefore foreseeable under <u>Michigan Paytel</u>.

## 2.  Tuscola County - State Action Exception

The Tuscola County Register does not provide any bulk discount rates.  All purchasers must pay the statutory $1 per page rate for public documents.  Plaintiffs allege that not providing discounted bulk rates is a violation of antitrust principles.  By providing paper records at a $1 per page rate, the Register is acting pursuant to statutory directives.  M.C.L. §§ 565.551(2), 600.2567(1)(b).  If these actions have any adverse effects on competition, they were clearly foreseen by the Michigan legislature when it set a statutory $1 rate.  There is no requirement that a Register provide discounted bulk rate to title insurance companies.  The Tuscola County Register's actions are immune from liability under the Sherman Act.  <u>City of Columbia</u>, 499 U.S. 365.

10

**D.  Count II - Constitutional Claims**

1.  Procedural Due Process

In order to establish a violation of their procedural due process rights, plaintiffs must first establish that they have been deprived of a liberty or property interest protected by the Due Process Clause.  Plaintiffs have failed to establish a liberty or property interest in the ability to purchase public records at a bulk rate with the ability to resell them.  Indeed, while there may be an interest in the ability to access public records, Plaintiffs have not been deprived of this interest.  They are able to purchase public records at the $1 statutory price.

2.  Substantive Due Process & Equal Protection Clause

Plaintiffs, citing a recent 6th Circuit decision, claim that the economic protectionism resulting from the Register's actions violates the Due Process Clause and the Equal Protection Clause.  Craigmiles v. Giles, 312 F.3d 220 (6th Cir. 2002).  The Craigmiles decision held that a state law which required persons selling caskets to be licensed funeral directors did not survive minimal rational basis review, and therefore violated both the Due Process Clause and the Equal Protection Clause.  The Craigmiles decision noted that rational basis scrutiny was an extremely low bar that requires only that a regulation bear some rational relation to a legitimate state interest.  Id at 223.  Regulations will be upheld "if there is any reasonably conceivable state of facts that could provide a rational basis."  Id. at 224 (quoting Walker v. Bain, 257 F.3d 660, 668 (6th Cir. 2001).

By protecting their own ability to sell public records, Plaintiffs claim the Registers are treating their competitors differently than they treat themselves in the public document sales

11

market.[1]  Plaintiffs advance another Equal Protection Clause theory when they claim that the Registers' actions result in a different prices paid by bulk records buyers who wish to resell documents (who must pay the $1 per page fee) and paid by bulk records buyers who do not wish to resell documents (who can pay a discounted fee).

The Register's actions are constitutional if they bear some rational relation to a legitimate state interest. This case is distinguishable from <u>Craigmiles</u> because the Register's actions serve to maintain the financial viability of the Register's offices themselves and the recording system generally.  The Registers are not arbitrarily choosing to help one private interest group at the expense of another, as was the case in <u>Craigmiles</u>.  They are instead acting in the interests of the county governments and the public more broadly.  The Register's actions are rationally related to the legitimate public interest of ensuring that counties receive adequate revenue to cover the costs of operating a recording scheme.  A county has a legitimate interest in trying to maintain or even increase revenue streams from public record sales.  Plaintiffs have failed to state a claim upon which relief can be granted under the Equal Protection Clause.

## D.  Count III - Michigan Law Prohibiting Counties from Operating Tract Indices

As described above, a Michigan statute prevents counties of less than 900,000 people from maintaining tract indices unless they get voter approval or the county board of commissioners approves it.  The registers do not claim that plaintiffs have failed to state a claim under which relief can be granted on this count.  Instead, they attach affidavits to their motions claiming they are not maintaining tract indices and move for summary judgment under Rule 56.

---

[1]It is not clear this is discrimination for Equal Protection Clause purposes.  The Registers may not be treating themselves differently from the title companies; they might be simply trying to provide access to public documents at different fees.  They are not choosing between two groups of private citizens in this line of argument.

Plaintiffs point to the websites of the counties, which provide databases searchable by legal description or address, and claim these are tract indices.  The parties have not yet engaged in discovery.  At this stage in the proceedings there is a genuine issue of material fact as to whether the Registers are indeed illegally maintaining a system of abstract of title.  Summary judgment is not warranted at this point.

However, the court notes that there may not be a private right of action for the title insurance companies to enforce this statute.  The federal courts have been cutting back on implied rights of actions in statutes.  See Gonzaga Univ.  v. Doe, 536 U.S. 237 (2002).  The Michigan courts have also issued some recent decisions restricting private rights of actions that are not expressly provided for in the statutes.  See Grand Traverse County v. State, 450 Mich. 457 (1995); Genesis Center PLC v. Blue Cross and Blue Shield of Michigan, 243 Mich. App. 692 (2000); Forster v. Delton School District, 176 Mich. App. 582 (1989).  This matter has not been addressed by the parties, however, and the court will not decide whether a private right of action to enforce this statute exists at this time.

Accordingly, **IT IS HEREBY ORDERED** that Defendant Dodak's March 15 Motion to Dismiss is **GRANTED** as to Counts I and II and **DENIED WITHOUT PREJUDICE** as to Count III.

**IT IS FURTHER ORDERED** that Defendant DeVaugh's March 25, 2005 Motion to Dismiss is **GRANTED** as to Counts I and II and **DENIED WITHOUT PREJUDICE**  as to Count III.

 **IT IS FURTHER ORDERED** that Defendants Fuller, McLaren, and Landheer's April

13

20, 2005 Motion to Dismiss is **GRANTED** as to Counts I and II and **DENIED WITHOUT PREJUDICE** as to Count III.


s/John Corbett O'Meara
John Corbett O'Meara
United States District Judge


Dated:  June 13, 2005

14